ETHEL MAY WILBUR, Appellee, v. IOWA POWER & LIGHT COMPANY, Appellant.

No. 43906.

1350

SEPTEMBER 28, 1937.

Bradshaw, Fowler, Proctor & Fairgrave, for appellant.

Lehmann, Hurlburt & Hossfeld, for appellee.

KINTZINGER, J.—On and prior to July 24, 1935, the defendant company was operating a high voltage transmission line along the southerly side of a public highway near Milo, Warren County, Iowa. Plaintiff resided on the north side of this road at an intersection with a north and south road. During the night of July 23, 1935, there was a heavy rain and wind storm in this vicinity and along the highway on which the electric line was constructed. As a result of the storm, two of the poles carrying high tension electric wires were blown down and fell partially across and extended 6 or 8 feet into the traveled part of the road. The third and fourth poles west of plaintiff's house and the intersection were blown over.

A telephone line ran along the north side of the highway in question. During the forenoon of July 24, plaintiff discovered that the telephone line was out of order. This condition had occurred before, and either the plaintiff or her husband, after examining the telephone line, found the crossed wires and repaired them by separating the wires. The telephone wires could be reached by a person standing on the ground on the north side of the road, and prior to the time in question plaintiff on one or two occasions had thus repaired the telephone line. The record also shows that between 12 and 1 o'clock on the day in question, the plaintiff, in company with her daughter, left her home for the purpose of locating the trouble on the telephone wires on the north side of the road. She testifies that in looking for the trouble she walked westerly along the north side of the muddy road.

The highway between the fence lines was 52 feet wide, and the traveled portion 24 feet. The electric light poles were about one foot inside the fence line on the south side of the road.

The top of the two poles which had blown over and the crossarms and wire attached thereto extended 6 or 8 feet into the traveled portion of the highway. They did not rest on the ground, but were held up about one foot above the highway by the high tension wires connected with the second and fifth poles. The lowest wire on the crossarms of the fallen poles was about 50 inches from the ground. Plaintiff was about five feet tall, and the lower part of plaintiff's head or neck came in contact with the lowest wire, as a result of which she received severe and serious bodily injuries, and is totally and permanently disabled.

At the time in question, there was a dense foliage about five feet high growing along the south side of the highway between the traveled portion of the road and the fence line. The foliage, however, did not extend into the traveled portion of the highway.

Plaintiff testified that as she was walking along the highway, she merely glanced up the road, saw no poles blown over, and paid no attention to the electric transmission line on the south side of the highway, but was engaged in looking at the telephone wires on the north side of the highway to find where they might be crossed. She testified that at the time she was walking along the highway, she did not know the electric poles and wires were down, and did not see them.

The record also shows that the plaintiff knew the high tension wires on the south side of the highway contained high voltage electricity, and that she knew the danger to be apprehended therefrom in case she came in contact therewith.

Although she testifies she was walking along the northerly side of the road, she must have unwittingly crossed over toward the south side, or she would not have come in contact with the high tension wire. She contacted the wire about 50 feet west of the third pole, as evidenced by the burned flesh and hair still found attached to the wire at that point.

At the close of the evidence, the case was submitted to the jury, which returned a verdict of $43,000. Defendant filed a motion for a new trial, which was overruled on condition that plaintiff remit all in excess of $28,000. The remittitur was filed

and judgment entered in that amount, from which defendant appeals.

One of the chief grounds of the motion for a new trial was that of newly discovered evidence, and defendant contends that the court erred in overruling the motion upon this ground. The motion was based upon a showing

"That after the case was submitted to the jury and the verdict returned, there first came to the attention of defendant newly discovered evidence * * *, which could not with reasonable diligence have been discovered and produced at the trial, * * *.

"That said newly discovered evidence will prove that * * * the day upon which the accident * * * occurred, at about 11:45 a. m., or thereabouts, Mr. Jobe H. Allen and his son Bernard D. Allen, of Ackworth, Iowa, were riding * * * along the public highway where the accident happened and saw the plaintiff * * * and her daughter, walking in an easterly direction on the south side of the highway, between the grader ditch and the south fence; that Mrs. Wilbur was stepping over the butt end of the westerly pole, which was broken and leaning out in the highway.

"As the record * * * stands, there is no direct evidence as to the manner in which plaintiff came in contact with the electric wires; there is no direct evidence that plaintiff at any time traveled to the south side of the highway; that the newly discovered evidence is material to the case."

In support of the motion on this ground, defendant also offered the testimony of one Wilbur, superintendent of the Knoxville department of the defendant company, which includes the territory and lines operating around Milo, Iowa, and the line where plaintiff was injured. He testifies that under instructions of defendant's attorneys, he made an investigation of the circumstances surrounding the accident, and that the facts disclosed by the newly discovered evidence were not learned by him until after the trial of the case; and "during the course of the investigation of the circumstances surrounding the accident, * * * he made inquiry of people residing in Milo and in the vicinity of the accident, to ascertain whether or not any person had witnessed the accident and whether or not any person had traveled along that highway at and prior to the accident; that he did not learn from these inquiries any of the

facts of the nature set forth in the statements of Jobe H. Allen and Bernard Allen, or any information which would lead him to believe that such facts existed."

Both of the Allens lived at Ackworth, which is about 5 or 6 miles from the scene of the accident. The superintendent also testified that he had no knowledge until he interviewed the Allens after the trial that they had any knowledge of the facts concerning the accident.

The affidavits of J. H. Allen and Bernard D. Allen attached to the motion for a new trial show substantially that

"They were engaged in carrying mail over Route 1 east and south of Ackworth, and that on the day of the accident, July 24, 1935, they saw the broken down electric transmission poles in question, and that as they drove by these poles they saw Mrs. Wilbur, the plaintiff, and her little girl, over by the south bank on the south side of the road. Mrs. Wilbur was stepping over the butt end of the west pole and by the time they got up to the wires, Mrs. Wilbur and the girl were half way between the two poles that were over in the road. They were walking east toward the Wilbur home. As they drove by, Mr. Allen spoke to Mrs. Wilbur and she nodded her head. That was about 11:45 a. m."

The attorneys engaged in the defense of this action for the defendant all filed affidavits showing that they had no knowledge of the facts sought to be shown by the newly discovered evidence, and that the fact that the Allens knew any of the matters alleged in the showing for a new trial had not previously been called to their attention.

Appellee contends that several people in the vicinity of the place where the accident occurred had knowledge of the fact that one of the Allens made statements to residents in that vicinity that he saw plaintiff climbing over one of the broken down poles shortly before noon of the day on which the accident occurred; and that an investigation among these people would have disclosed the existence of such facts to the defendant; and that defendant failed to exercise due diligence in failing to discover such evidence before the trial. Appellee, therefore, contends that the lower court did not abuse its discretion in overruling the motion for a new trial.

Section 11550, par. 7, of the Code of 1935, provides a new trial shall be granted on the ground of

1354

"7. Newly discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial."

After the trial of the case, and while the court was instructing the jury, defendant's superintendent Wilbur was told that a rural mail carrier living at Ackworth was reported to have said that a short time previous to the accident, he had seen the plaintiff and her daughter on the highway. After getting this information, Wilbur was instructed to verify the story, and that afternoon he interrogated J. H. Allen and Bernard D. Allen, and then first learned of the facts set out in the motion for a new trial. These facts were not ascertained by the defendant company until after the verdict had been returned. It appears from this showing that the Allens, who lived some 5 or 6 miles from the scene of the accident, were not interrogated by the defendant's investigators prior to the trial of this case. It does appear, however, that as soon as the defendant company learned of the facts purported to be known by these witnesses, they interrogated them, and discovered the evidence upon which defendant now seeks a new trial.

 It is the rule that where the applicant for a new trial on the ground of newly discovered evidence has failed to exercise due diligence in attempting to secure the evidence before the trial, the court is justified in refusing a new trial. Baxter v. Cedar Rapids, 103 Iowa 599, 72 N. W. 790; Sevening v. Smith, 153 Iowa 639, 133 N. W. 1081; Carpenter v. Loetscher, etc. Co., 178 Iowa 320, 157 N. W. 938; Graham v. Ochsner, 193 Iowa 1196, 188 N. W. 838.

It is likewise the rule that where defendant has shown due diligence in attempting to secure the evidence before the trial, a new trial should be granted. Henderson v. Edwards, 191 Iowa 871, 183 N. W. 583, 16 A. L. R. 1090.

In the latter case, this court said, 191 Iowa 871, loc. cit. 872, 183 N. W. 583, 584, 16 A. L. R. 1090:

"It is undisputed that the conversations to which we will presently refer were not called to the attention of the defendant prior to the trial. The three affiants upon whose testimony defendant relies in support of his motion respectively state that the admissions of plaintiff contained in the affidavits were not previously called to the attention of the defendant or of any

other person. It may not be said that there was a lack of diligence on the part of defendant in discovering this evidence prior to the trial. A litigant may have opportunities to inquire, but there must be something which suggests to him the propriety of making such inquiry; otherwise he would be compelled to send a questionnaire to all persons within the area of probable knowledge who might have some information concerning the facts in dispute.

"A party to a suit may not be accused of a lack of diligence when he possesses no means of knowing that the evidence subsequently discovered was previously obtainable. State v. Lowell, 123 Iowa 427, 99 N. W. 125. * * *

"If it can be said that, in all probability, the newly discovered evidence will not affect the result in case of a second trial, then the motion should be denied. If the proffered evidence presents material facts germane to the issue in controversy, which, considered with the evidence presented on the trial, might cause a jury to take the other view, then the motion should be sustained. Dobberstein v. Emmet County, 176 Iowa 96, 155 N. W. 815. True, this is speculative, but nevertheless the rule stated is a reasonably safe guide."

■■■ While it may be true that several residents in the vicinity of the accident may have been told of the facts known by the newly discovered witnesses, it cannot be said that where defendant's investigators made inquiry among the residents of the community where the accident occurred, that it was required to interrogate all persons within a radius of 5 or 6 miles of the scene of the accident, where there was nothing to suggest the propriety or necessity of making such inquiries.

■■■ In view of the fact that neither the plaintiff nor the defendant offered any evidence tending to show specifically where the plaintiff was at the time the injury took place, or that she knew of the condition of the wires and poles prior thereto, it must be clear that as the plaintiff testified she had no knowledge of the fallen poles, evidence that she was seen stepping over one of them a short time before the accident was vitally material on the question of her knowledge of the conditions at the time in question. This evidence is not cumulative, but tends directly to show that the plaintiff had knowledge of the broken-down conditions of the poles and wire.

It cannot be said that the newly discovered evidence offered is not material or germane to the issue in this case. Nor can it be said that such evidence would not affect the result in case of a new trial. It tends to show that the plaintiff shortly before the accident was stepping over one of the broken-down poles. If this fact be established, it might well affect the result of the case on a retrial.

It is our conclusion from the showing in support of the motion for a new trial that there was no lack of diligence on the part of the defendant in failing to discover the new evidence. We are, therefore, constrained to hold that the lower court erred in refusing to grant a new trial upon this ground.

Other errors are alleged as grounds for a new trial, but as a retrial results because of the reasons pointed out, we deem it unnecessary to consider them here, and, therefore, refrain from a discussion thereof.

For the reasons hereinabove expressed, the judgment of the lower court is hereby reversed.—Reversed.

HAMILTON, C. J., and ANDERSON, DONEGAN, RICHARDS, PARSONS, STIGER, and SAGER, JJ., concur.