IN RE ESTATE OF JAMES E. CANTERBURY.

FIRST ADVENTIS CHURCH, Petitioner, Appellant, v. ELMORE MEMORIAL ADVENTIST CHRISTIAN CHURCH, Respondent, Appellee.

No. 44203.

MARCH 8, 1938.

Stull, Lucier & Elmquist and U. S. Albertson, for appellant.

Stanley L. Moody and J. T. Reynolds, for appellee.

KINTZINGER, J.—The question involved in this case relates to the construction of paragraph two of the will of James E. Canterbury, deceased, who died at Des Moines, Iowa, in September, 1936. The material part of paragraph two of the will is as follows:

"I give, devise, bequeath, and appoint to the 'FIRST ADVENTIS CHURCH' located on Bigley Avenue in Charleston, West Virginia, certain notes and securities located in the Kanawha Valley Bank of Charleston, West Virginia. * * * If it ever becomes necessary to foreclose on said property, * * * I give, devise, and bequeath the above described property to the 'FIRST ADVENTIS CHURCH' on Bigley Avenue in Charleston, West Virginia."

The evidence shows without dispute that there is in fact a church known as the "FIRST ADVENTIS CHURCH" in Charleston, West Virginia, and that the petitioner herein is that church. The evidence shows, however, that the "FIRST ADVENTIS CHURCH" is located upon Randolph Street and not upon "Bigley Avenue."

The evidence shows without dispute that there is another church on "Bigley Avenue" known as the "ELMORE MEMORIAL ADVENTIST CHRISTIAN CHURCH," the respondent and appellee herein. Appellee contends that the will should be construed in such a manner as to make the "ELMORE MEMORIAL ADVENTIST

CHRISTIAN CHURCH'' the devisee and legatee under this will because it is located on ''Bigley Avenue.''

The record tends to show that the decedent lived at Charleston, West Virginia, between 1914 and 1918, and he sometimes attended the ''ELMORE MEMORIAL ADVENTIST CHRISTIAN CHURCH.'' He lived only a short distance from the ''FIRST ADVENTIS CHURCH'' and owned property nearer that church than the other. The evidence also tends to show that the decedent, during the last two and a half years he lived in Charleston, regularly attended the ''FIRST ADVENTIS CHURCH'' on *Randolph Street*. There is also testimony tending to show that he was a lifelong friend of the pastor of the ''ELMORE MEMORIAI, ADVENTIST CHRISTIAN CHURCH.''

The attorney and scrivener who drew the will said that the decedent manifested no uncertainty as to the *name* of the church he intended making his beneficiary, and that he clearly designated the ''FIRST ADVENTIS CHURCH'' as such. His testimony, however, tends to show that the decedent manifested some uncertainty as to *the location of the church;* he said that decedent stated there were two Adventist churches in Charleston, and he wanted to get the right one. He testified that decedent thought the church was on Randolph Street and that he would advise him later on if there was to be any change; that the decedent did telephone the scrivener and advise him that the correct address of the church was ''Bigley Avenue,'' and that the church he was making his bequest to was located on ''Bigley Avenue.'' Aside from testimony tending to show decedent's close association with the ''FIRST ADVENTIS CHURCH'' named in the will, there was no direct evidence contradicting that of the scrivener in relation to the location of the church he had in mind.

After both parties had rested, but before the case was submitted to the court, the appellant filed a motion to reopen the case for the purpose of introducing newly discovered evidence. This was overruled, the case was submitted and a judgment entered in favor of respondent, appellee. Petitioner appeals.

One of the errors alleged as a ground for reversal was the refusal of the court to reopen the case for the purpose of admitting the testimony of Mrs. Canterbury, widow of decedent. The petitioner, as a ground for reopening the case, showed that on several occasions prior to the trial its representatives interviewed Mrs. Canterbury, the surviving widow of the decedent, to ascer-

tain what she knew about the case. On each occasion she refused to make any statement as to her knowledge of the matters in question, and told the representatives of the petitioner that she would make no statement as to what she knew about the case or what her testimony might be.

Mrs. Canterbury was present in court during the trial, but not until after the evidence was closed, and the arguments of counsel began, did she manifest any disposition to advise petitioner, or its counsel, what she knew about the case. The record shows that Mrs. Canterbury, the widow, also requested the court to permit her to testify, but on objection of counsel for respondent this was denied. The record shows further that at no time prior to the full submission of the case, down to the arguments, did the petitioner, or its counsel, know or have any knowledge as to the substance of the widow's testimony. It was further shown to the court that if Mrs. Canterbury were permitted to testify she would testify in accordance with an affidavit filed by her, marked Exhibit A; that said testimony is material to the issue in this case, and that even though the hearing was closed and final determination had not yet been reached and no prejudice would result to respondent or any other interested party thereby.

Her affidavit, made part of the showing, is as follows:

"AFFIDAVIT

"State of Iowa, Polk County, ss:

"I, Loretta Canterbury, surviving wife of James E. Canterbury, deceased, being first duly sworn on oath depose and say that at the time of his death I was his wife and had been for some time prior thereto; that during the month of July, 1936, my husband in company with me drove to Charleston, West Virginia, and we remained in said city several days, and during our stay in the city we drove in the car together around the town, and on one particular occasion, my husband drove the car in front of the First Advent Church in said city of Charleston, West Virginia, and after making observation as to the name of said church, remarked to me that he had made a mistake and when I questioned him as to what mistake he had made, he replied that the First Advent Church was on Randolph Street and that he had designated Bigley Avenue in his will; that the First Advent Church was and is the church that was to receive

the bequest and he told me to see that the correction was made if he was unable to make the correction or for any reason did not get the proper street in his will. That upon our return to Des Moines, Iowa, his condition became too grave and the matter was never referred to again.

"I further state that if I am permitted to testify, I will testify as stated above and that this affidavit is made of my own free will, and I now indicate my desire to give this evidence as I previously did in open court.

"[Signed] Loretta Canterbury.

"Subscribed and sworn to before me on this 26th day of May, 1937, by Loretta Canterbury.

"[Signed] Beeler Stull,

"Notary Public in and for Polk County, Iowa."

Appellant contends that the court abused its discretion in not reopening the case for the purpose of receiving the testimony of Mrs. Canterbury.

Appellee contends that the granting or refusing of a motion to reopen the case is within the sound discretion of the court. This is the general rule, and, if the court has not abused its discretion, the case should not have been reopened. Osgood v. Bauder, 82 Iowa 171, 47 N. W. 1001; Baker v. Jamison et al., 73 Iowa 698, 36 N. W. 647; In re Estate of Rich, 199 Iowa 902, 200 N. W. 713; Cresco Union Sav. Bank v. Terry & Terry, 202 Iowa 778, 211 N. W. 228.

Likewise it is the rule that if the court, in failing to reopen the case, has abused its discretion, appellant should be entitled to a new trial. Schipfer v. Stone, 206 Iowa 328, 218 N. W. 568, 219 N. W. 933; Henderson v. Edwards, 191 Iowa 871, 183 N. W. 583, 16 A. L. R. 1090; Simpson College v. Executors Mann Estate, 203 Iowa 447, 212 N. W. 684; Wilbur v. Iowa Power & Light Co., 223 Iowa 1349, 275 N. W. 43; Cowan v. Musgrave, Ex'r., 73 Iowa 384, 35 N. W. 496; Sickles v. Dallas Center Bank, 81 Iowa 408, 46 N. W. 1089; Kimball & Champ v. Saguin, 86 Iowa 186, 53 N. W. 116; Tisdale v. Ennis, 144 Iowa 306, 122 N. W. 959; In re Estate of Carroll, 149 Iowa 617, 128 N. W. 929; First National Bank v. Fulton, 156 Iowa 734, 137 N. W. 1019.

Appellee contends that the proposed witness, Mrs. Canterbury, was present in court during the entire trial of the case

and could have been subpoenaed or put on the witness stand by appellant, and therefore her testimony is not newly discovered. This is not entirely correct. While the witness was in court and the appellant could have placed her on the witness stand, the showing made by appellant to reopen the case indicates that appellant and its attorneys had no knowledge whatever of the facts within her possession. Appellant had no knowledge of the facts proposed to be shown by Mrs. Canterbury; on the contrary, it knew nothing about the trip to Charleston which Mrs. Canterbury made with her husband, when they drove up to the "First Adventis Church" on Randolph Street where Mr. Canterbury told her that was the church to which he left the property in his will and that he made a mistake in the street upon which the church was located. Although Mrs. Canterbury might not have been a newly discovered witness, the evidence proposed to be shown by her was newly discovered evidence upon which petitioner asked to have the case reopened, so far as appellant was concerned.

In Schipfer v. Stone, 206 Iowa 328, 1. c. 331, 218 N. W. 568, 570, 219 N. W. 933, this court said:

"The evidence in this case was closed upon the adjournment of the court one afternoon, and both parties rested. When the court convened on the following morning, the appellant asked leave to reopen the case. It was recited in the motion of the appellant that two of said appellees had formerly appeared before the grand jury, and had given testimony to the effect that it had not been said to them, at the time of the signing of the notes in question, that the Gibford Chemical Company was a corporation, and that the said testimony before the grand jury was reduced to writing and subscribed by the witnesses.

"It also appeared that, during the trial of the case, a diligent search had been made to locate the said statements given before the grand jury, * * * The search had been unsuccessful; and later in the evening of the day on which the parties rested, the clerk discovered a receipt that had been given for said papers by an attorney who resided at Tama, Iowa. Telephone communication with the attorney caused him to search for the papers, and he discovered them, and said papers were produced and delivered to counsel for the appellant shortly before the reconvening of the court on the following morning.

"The request of the appellant to reopen the case for cross-examination of these two witnesses in connection with said statements which were then in the hands of counsel for the first time, was made promptly upon the opening of court. This request was denied. It is the rule that a matter of this kind must, of necessity, rest largely in the discretion of the trial court. Cases must be tried expeditiously. The proverbial 'law's delay' should be avoided as much as is consistent with the proper administration of justice. Due diligence must always be shown, where an application is made to reopen a case for the introduction of further testimony. It is apparent that appellant's counsel did use due diligence to discover the evidence which he sought to introduce. He went to the place where the statements were lawfully required to be kept. The clerk was unable to find them in such place, and the records in the office failed to disclose where the papers were. It was only by continued and diligent search that the clerk was able to discover a receipt for said papers, which disclosed that they had been withdrawn from their proper repository. Prompt efforts were made to secure their possession, and they were returned, and came into the custody of counsel for the appellant but a short time before reconvening of court. Request was made forthwith to reopen the case for the purpose of further cross-examination, to lay the groundwork for impeachment. The examination covering this one subject-matter could have been conducted in a very few moments. It was a very material part of the case. It had to do with one of the essential representations relied upon by the appellees. In the light of the circumstances, we are constrained to hold that the trial court abused its discretion by denying to the appellant the right to reopen the case and permit the witnesses to be recalled for examination as to the matter in issue. * * * The trial court erred in denying the application of the appellant."

In Henderson v. Edwards, 191 Iowa 871, l. c. 873, 183 N. W. 583, 584, 16 A. L. R. 1090, this court said:

"It may not be said that there was a lack of diligence on the part of defendant in discovering this evidence prior to the trial. A litigant may have opportunities to inquire, but there must be something which suggests to him the propriety of making such inquiry; * * *

"A party to a suit may not be accused of a lack of diligence

*when he possesses no means of knowing that the evidence subsc-quently discovered was previously obtainable.* State v. Lowell, 123 Iowa 427, 99 N. W. 125. * * * [Italics ours.]

"If it can be said that, in all probability, the newly discovered evidence will not affect the result in case of a second trial, then the motion should be denied. If the proffered evidence presents material facts germane to the issue in controversy, which, considered with the evidence presented on the trial, might cause a jury to take the other view, then the motion should be sustained. Dobberstein v. Emmet County, 176 Iowa 96, 155 N. W. 815. True, this is speculative, but nevertheless the rule stated is a reasonably safe guide."

In Simpson College v. Executors Mann Estate, 203 Iowa 447, 1. c. 451, 212 N. W. 684, 686, this court said:

"While the question is very close to the line, we are disposed to hold that the court, * * * should have permitted the appellant to introduce the testimony, then said to be present in court."

This rule is also announced in Wilbur v. Iowa Power & Light Company, 223 Iowa 1349, 275 N. W. 43, where the defendant knew the names of certain witnesses but knew nothing about the facts to which they could testify.

■■■ Mrs. Canterbury's evidence was a very material part of the case, and although she was present in court and could have been put on the witness stand, appellant had no knowledge whatever of the evidence she would give. The record shows that as soon as appellant discovered this evidence, its counsel not only advised the court thereof but filed a motion to reopen the case. Under the circumstances we are constrained to hold that the lower court, before the case had been finally submitted to the court, should have reopened the case for the purpose of admitting her testimony, to show that it was the testator's intention to devise the property to the petitioner church located on Randolph Street.

It is therefore our conclusion that the case should have been reopened and that it was an abuse of discretion on the part of the lower court in not so doing.

As the court erred in this respect, it is deemed unnecessary to consider other questions raised.

For the reasons hereinabove expressed, the judgment of the lower court is hereby reversed.—Reversed.

STIGER, C. J., and HAMILTON, SAGER, and MILLER, JJ., concur.